USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: FEB 1 3 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                             :
UNITED STATES OF AMERICA,                    :
                                             :     INFORMATION
            - v. -                           :
                                             :     15 Cr. 084
STEVEN HART,                                 :
                                             :
            Defendant.                       :
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JUDGE FAILLA

## COUNT ONE

**(Obstruction of an Agency Proceeding)**

The United States Attorney charges:

**Relevant Entities and Individuals**

1.  At all times relevant to this Information, Octagon Capital Partners, LP ("Octagon") was a private investment fund with its principal place of business located in New York, New York.

2.  At all times relevant to this Information, STEVEN HART, the defendant, controlled and directed Octagon, including the purchase and sale of securities by Octagon. Through Octagon, HART invested his own money and the money of several of his associates.

3.  At all times relevant to this Information, the "Investment Firm" was a private company with its principal place

of business in Englewood Cliffs, New Jersey.  The Investment Firm managed several funds (the "Investment Funds"), including one particular fund (the "Fund").

    4. At all times relevant to this Information, STEVEN HART, the defendant, served as a portfolio manager at the Investment Firm.  In his capacity as a portfolio manager at the Investment Firm, HART exercised trading authority over the brokerage accounts for the Fund.

    5. At all times relevant to this Information, STEVEN HART, the defendant, reported directly to the president and owner of the Investment Firm (the "Investment Firm President").

    6. At all times relevant to this Information, Octagon was not affiliated in any way with the Investment Firm or the Investment Funds.

### The Securities and Exchange Commission Investigation

    7. In or about 2009, the U.S. Securities and Exchange Commission (the "SEC") was conducting an investigation into certain conduct of STEVEN HART, the defendant (the "SEC Investigation").

    a) First, the SEC was investigating whether, in his capacity as a portfolio manager at the Investment Firm, HART had conducted non-arms-length "match trades" or "cross trades" between his personal fund, Octagon, and the Fund.  That is, the

2

SEC was investigating whether HART (1) caused Octagon to purchase certain securities on the open market; and (2) then caused the Fund to purchase these securities from Octagon at inflated, above-market prices so that Octagon could profit.

        b)    Second, the SEC was investigating whether HART had traded in securities based on material non-public information ("MNPI") relating to confidentially-marketed securities offerings that HART obtained while being solicited to invest in these offerings. That is, the SEC was investigating whether HART (1) had been solicited to invest in certain offerings; (2) obtained MNPI as part of that solicitation, including the identity of the issuer and the anticipated timing of any public announcements; and (3) subsequently traded on the basis of the MNPI after committing not to do so.

        8.    As part of the SEC Investigation, SEC attorneys, among other things, sent document subpoenas to the Investment Firm and called the Investment Firm on multiple occasions in order to speak to the Investment Firm President.

        9.    In the course of the SEC Investigation, SEC attorneys also took sworn testimony of several individuals relevant to the SEC Investigation, including STEVEN HART, the defendant.

## Hart's Efforts to Obstruct Justice

### Overview

10.  STEVEN HART, the defendant, engaged in an effort to obstruct the SEC Investigation.  First, in an effort to prevent his employer and direct supervisor, the Investment Firm President, from learning about the SEC Investigation, HART produced documents to the SEC in response to the SEC subpoena which had been sent to the Investment Firm without informing anyone else at the Investment Firm about the subpoena and without informing the SEC that HART alone produced records from the Investment Firm.  Second, HART provided sworn testimony to the SEC in which he falsely stated that the Investment Firm President had been aware of, and approved, HART's match trading activity and that HART and the Investment Firm President had discussed the SEC Investigation.  Third, HART impersonated his employer and direct supervisor, the Investment Firm President, among others, during phone calls with SEC attorneys.

### Hart Responds to SEC Subpoena Sent to The Investment Firm

11.  On or about July 27, 2009, the SEC issued a subpoena to the Investment Firm, care of the Investment Firm President, seeking the production of several different categories of documents relating to the SEC Investigation.  The subpoena was mailed to the business address of the Investment

4

Firm, in Englewood Cliffs, New Jersey.

12. STEVEN HART, the defendant, received the subpoena at the Investment Firm before it was seen by anyone else at the Investment Firm and produced documents to the SEC in New York, New York without (a) informing anyone else at the Investment Firm that the firm had received a subpoena from the SEC, or (b) informing the SEC that it was HART alone who responded to the subpoena.

### Hart Lies During Sworn SEC Testimony

13. On or about August 19, 2009, STEVEN HART, the defendant, appeared for and gave testimony before the SEC in New York, New York. During that sworn testimony, HART made several materially false statements to the SEC, including the following:

a. HART falsely testified that he and the Investment Firm President had discussed and agreed that HART should conduct match trades involving the Fund as part of an investment strategy for the Fund. In truth, HART never discussed match trading with the Investment Firm President, and the Investment Firm President had never approved HART's match trades.

b. HART falsely testified that he and the Investment Firm President had discussed the SEC Investigation, and that the Investment Firm President was aware

5

of HART's having been subpoenaed to testify before the SEC.  In truth, HART never disclosed to the Investment Firm President that the SEC was investigating HART's conduct or that HART had been subpoenaed to testify.

### Hart Impersonates His Supervisor and a Coworker During Telephone Calls with the SEC

14.  On or about December 8, 2009, an SEC attorney called the Investment Firm to speak with the Investment Firm President regarding the SEC Investigation.  STEVEN HART, the defendant, received the phone call and pretended to be another employee of the Investment Firm.  The SEC attorney asked HART, who was pretending to be another employee, to relay to the Investment Firm President that the attorney had called and to ask the Investment Firm President to return the call.  HART did not relay to the Investment Firm President that an attorney from the SEC had called.

15.  On a second occasion, on or about December 9, 2009, the same SEC attorney again called the Investment Firm in order to speak with the Investment Firm President.  STEVEN HART, the defendant, again received the phone call and, on this occasion, pretended to be the Investment Firm President.  During that call, HART, speaking as the Investment Firm President, falsely stated to the SEC attorney that:  (1) the Investment

6

Firm President was aware that HART engaged in improper trading activity, but nevertheless wanted HART to remain an employee of the Investment Firm; and (2) the Investment Firm President was aware of, and had approved, Hart's match trading activity as a means for the Fund to dispense of restricted shares of stock.

    16. On a third occasion, on or about December 11, 2009, the same SEC attorney, along with a second SEC attorney, called the Investment Firm to speak with the Investment Firm President. STEVEN HART, the defendant, again received the phone call and again pretended to be the Investment Firm President. During that call, HART, speaking as the Investment Firm President, falsely stated to the SEC attorneys that: (1) HART's match trading activity was an intentional strategy of the Investment Firm to take a loss on the trading in exchange for the ability to sell otherwise restricted shares of stock; (2) HART was still a valued employee of the Investment Firm who had earned the Investment Firm far more than whatever amount HART had gained through match trading; and (3) HART had fully disclosed to the Investment Firm President that HART had traded based on MNPI and that this was a one-time mistake that would not happen again. Each of these statements was false.

## Statutory Allegations

17. From in or about July 2009, through at least in or about December 2009, in the Southern District of New York and elsewhere, STEVEN HART, the defendant, corruptly influenced, obstructed and impeded, and endeavored to influence, obstruct and impede the due and proper administration of the law under which a pending proceeding was being had before a department and agency of the United States, to wit, in the course of an investigation by the SEC into HART's securities trading, HART (1) produced records to the SEC in response to a subpoena sent to the Investment Firm without informing anyone else at the Investment Firm about the subpoena and without informing the SEC that HART alone produced records from the Investment Firm; (2) falsely testified before the SEC that his employer, the Investment Firm President, had been aware of, and had approved, HART's match trades and that HART and the Investment Firm President had discussed the SEC's investigation into HART's conduct; and (3) impersonated the Investment Firm President during telephone conversations with SEC personnel.

(Title 18, United States Code, Section 1505.)

## COUNT TWO

## (Perjury)

The United States Attorney further charges:

18. The allegations contained in paragraphs 1 through 16 of this Information are repeated and realleged as though fully set forth herein.

19. On or about August 19, 2009, in the Southern District of New York, STEVEN HART, the defendant, having taken an oath before a competent officer and person, in a case in which a law of the United States authorized an oath to be administered, that he would testify, declare, depose, and certify truly, willfully and contrary to such oath, stated and subscribed to material matters which he did not believe to be true, to wit, HART, during sworn testimony to the SEC, gave the following false underlined testimony:

> Q: You mentioned that we didn't think there was any problem with the [match trading] transactions. Who is the "we" you're speaking about?
>
> (a) A: <u>Myself and [the Investment Firm President.]</u>
>
> Q: So you and [the Investment Firm President] decided to do this arrangement?
>
> (b) A: <u>Yes.</u>

\* \* \*

> Q: Did [the Investment Firm President] ask you what is this about or why is the SEC looking at these trades?
>
> (c) A: <u>We figure[d] it was on the deals, on the offering section we have no clue, on the trade section like I told you earlier we had a hunch and we figured it was about those cross trades.</u>
>
> Q: Is this a conversation you had with [the Investment Firm President]?
>
> (d) A: <u>Yes.</u>

(Title 18, United States Code, Section 1621.)

*[signature: Preet Bharara]*
PREET BHARARA
United States Attorney

10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

STEVEN HART,

Defendant.

INFORMATION

15 Cr.

(18 U.S.C. §§ 1505, 1621)

PREET BHARARA
United States Attorney.