F3DVHARP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

              v.                        15 CR 84 (KPF)

STEVEN HART,

                Defendant.              PLEA

------------------------------x

                                        New York, N.Y.
                                        March 13, 2015
                                        3:05 p.m.


Before:

                HON. KATHERINE POLK FAILLA,

                                        District Judge


                        APPEARANCES


PREET BHARARA,
      United States Attorney for the
      Southern District of New York
JASON H. COWLEY
      Assistant United States Attorney

JEFFREY T. KERN
KEVIN R. PUVALOWSKI
      Attorneys for Defendant

F3DVHARP

1          (Case called)

2          THE COURT:  Mr. Puvalowski, do you have a copy of the

3    indictment?  And if you have it, can you place it in front of

4    your client.

5          MR. PUVALOWSKI:  Yes, your Honor.

6          THE COURT:  Thank you.

7          MR. COWLEY:  Your Honor, just so the record is clear,

8    it's an information.

9          THE COURT:  Information.  Excuse me.  I knew that's

10   what threw them off.  Thank you.

11         Mr. Hart, I'm going to ask you, please, to bring the

12   microphone as close to you as possible, only because the

13   acoustics in this courtroom are what they are.

14         Your counsel has placed before you a copy of the

15   information; I believe it was the information on which you were

16   arraigned a few weeks ago.

17         And I've been told, sir, that it is your intention

18   today to change your plea and to plead guilty to Counts One and

19   Two of this information.

20         Is that correct, sir?

21         THE DEFENDANT:  Yes, it is.

22         THE COURT:  Mr. Hart, I'm going to ask you a series of

23   questions.  And these questions serve a number of purposes, so

24   let me tell you what some of those purposes are.

25         I want to make sure, first, that you are competent and

F3DVHARP

1    that you understand what's going on today.  I want to make sure

2    you are pleading guilty because you are, in fact, guilty of

3    these offenses and not for some other reason.

4              MR. PUVALOWSKI:  Judge, would you prefer if we rise?

5              THE COURT:  No, I want him to be comfortable.  If he's

6    more comfortable sitting down, he's welcome to sit down.  I

7    appreciate that many times folks stand as a formality, but I

8    care more that he's comfortable.  Of course, Mr. Hart, if

9    you're more comfortable standing, you can do that, too.

10             THE DEFENDANT:  I'm fine.

11             THE COURT:  Okay.  So again, sir, these questions are

12   designed to make sure that you are pleading guilty because you

13   are, in fact, guilty; that you understand what your rights are,

14   what rights you would be waiving; that you understand what the

15   consequences would be of a guilty plea.

16             The most important thing today, sir, is that you

17   understand what's going on.  So if at any point in these

18   proceedings there's something about my question that doesn't

19   make sense or there's something that you want to ask of your

20   counsel, we'll take whatever breaks you need.  So please feel

21   free to do that; let me know if something I'm asking you

22   doesn't make sense or let me know if you need to take a break

23   just to discuss something with your counsel.

24             All right, sir?

25             THE DEFENDANT:  Okay.

F3DVHARP

1          THE COURT:  Mr. Lopez, could you please swear in

2     Mr. Hart.

3          (Defendant sworn)

4          THE DEPUTY CLERK:  Please state your name for the

5     record.

6          THE DEFENDANT:  Steven Hart.

7          THE DEPUTY CLERK:  Thank you.  You may be seated.

8          THE COURT:  Mr. Hart, the significance of you being

9     placed under oath is that if at any point in time you answer

10    any of my questions falsely, you may be prosecuted for the

11    separate offense of perjury.

12          Do you understand that, sir?

13          THE DEFENDANT:  Yes, I do.

14          THE COURT:  Mr. Hart, how old are you?

15          THE DEFENDANT:  Forty-three.

16          THE COURT:  How far did you go in school, sir?

17          THE DEFENDANT:  I had a postgraduate degree at NYU

18    Stern.

19          THE COURT:  Have you ever been treated or hospitalized

20    for any form of mental illness?

21          THE DEFENDANT:  No.

22          THE COURT:  Have you ever been hospitalized or treated

23    for any form of addiction, including drug or alcohol addiction?

24          THE DEFENDANT:  No.

25          THE COURT:  Have you taken any drugs, medicine, or

F3DVHARP

1    pills in the last two days?

2              THE DEFENDANT:  No.

3              THE COURT:  Have you consumed any alcoholic beverages

4    in the past two days?

5              THE DEFENDANT:  No.

6              THE COURT:  Is your mind clear today, sir?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Do you understand what is happening?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Mr. Puvalowski, have you discussed this

11   matter with Mr. Hart?

12             MR. PUVALOWSKI:  I have, your Honor.

13             THE COURT:  Do you believe that he understands what he

14   would be doing, what rights he would be waiving by pleading

15   guilty?

16             MR. PUVALOWSKI:  I do, your Honor.

17             THE COURT:  Do you have any reason to doubt his

18   competence to plead guilty?

19             MR. PUVALOWSKI:  No.

20             THE COURT:  Do you believe he's understanding the

21   nature of these proceedings?

22             MR. PUVALOWSKI:  I do.

23             THE COURT:  Mr. Cowley, do you have any doubt as to

24   Mr. Hart's competence to plead guilty?

25             MR. COWLEY:  I do not, your Honor.

F3DVHARP

1          THE COURT:  Mr. Hart, based on your answers of the

2     questions I've just asked you, my observations of your demeanor

3     here in court today, and the discussions I've just had with

4     your counsel and the counsel for the government, I find that

5     you are fully competent to enter a knowing and voluntary plea

6     of guilty.

7          Now, you have seen the information before you, sir.

8     Have you had enough of an opportunity to discuss with your

9     attorneys the charges to which you intend to plead guilty and

10    any possible defenses that you might have to these charges?

11          THE DEFENDANT:  Yes, I have.

12          THE COURT:  Have your attorneys explained to you the

13    consequences of entering a plea of guilty?

14          THE DEFENDANT:  Yes, they have.

15          THE COURT:  And are you satisfied with your attorneys'

16    representations of you in this matter?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Then, Mr. Hart, what I would like to do is

19    turn to the rights that you have and rights that you be waiving

20    by pleading guilty.  Once again, sir, the most important thing

21    is that you understand what I am saying; so, again, you'll let

22    me know if you need any sort of break or any sort of

23    clarification.

24          I'll begin with this:  Under the Constitution and laws

25    of the United States, you have the right to plead not guilty to

F3DVHARP

1     the charges contained in the information.

2               Do you understand that, sir?

3               THE DEFENDANT:  Yes, I do.

4               THE COURT:  If you decided to plead not guilty, you

5     would be entitled to a speedy and public trial by a jury on the

6     charges contained in the information.

7               Do you understand that, sir?

8               THE DEFENDANT:  I understand.

9               THE COURT:  At a trial, you would be presumed to be

10    innocent, and the government would be required to prove you

11    guilty by competent evidence beyond a reasonable doubt before

12    you could be found guilty.

13              Do you understand that, sir?

14              THE DEFENDANT:  Yes, I do.

15              THE COURT:  A jury of 12 people would have to find

16    that you were guilty, and you would not have to prove that you

17    were innocent if you were to go to trial.

18              Do you understand that?

19              THE DEFENDANT:  I do.

20              THE COURT:  At that trial and at every stage of your

21    case, you would be entitled to be represented by counsel.  And

22    if at any point in time you were unable to afford an attorney,

23    one would be appointed for you at public expense, that is, free

24    of cost, in order to represent you.

25              Do you understand that, sir?

F3DVHARP

1          THE DEFENDANT:  Yes, I understand.

2          THE COURT:  If there were a trial in this case, the

3    government's witnesses would have to come to court and testify

4    in your presence.  And your attorneys could cross-examine the

5    witnesses for the government, they could offer evidence on your

6    behalf, they could challenge the evidence that was offered by

7    the government.  You would also have the right to have

8    subpoenas issued or other process used to compel witnesses to

9    testify in your defense.

10          Just to be clear, sir, you would have no obligation to

11    present any case, but if you wanted to, your attorneys could.

12          Do you understand that, sir?

13          THE DEFENDANT:  Yes, I understand.

14          THE COURT:  If there were a trial in this case, you

15    would have the right to testify if you chose to do so, but you

16    would also have the right not to testify if you chose to do so.

17    And if you decided not to testify, no one, including the jury,

18    could draw any inference or suggestion of guilt from the fact

19    that you did not testify.

20          Do you understand that?

21          THE DEFENDANT:  Yes, I understand.

22          THE COURT:  Mr. Hart, I want to make sure that you've

23    had an opportunity to discuss with your attorneys whether there

24    is any basis to seek suppression or exclusion of some or all of

25    the government's evidence against you on the grounds that your

F3DVHARP

```
1   constitutional rights may have been violated.  Now, again, sir,
2   I'm not saying there were, I just want to make sure you've had
3   a chance to talk to your attorneys about that.
4            THE DEFENDANT:  Yes, I have.
5            THE COURT:  And do you understand, sir, that by
6   entering a guilty plea, one of the things that you do is give
7   up your right to seek suppression or exclusion of the evidence
8   against you?
9            THE DEFENDANT:  Yes, I understand.
10           THE COURT:  Mr. Hart, if this case were to proceed to
11  trial and if you were to be convicted at a trial, you would
12  have the right to appeal from that verdict.
13           Do you understand that?
14           THE DEFENDANT:  Yes, I do.
15           THE COURT:  And even now, sir, as you're entering this
16  guilty plea, you have the right to change your mind and to
17  enter a plea of not guilty, and we can proceed to trial on the
18  charges contained in the information.
19           Do you understand that?
20           THE DEFENDANT:  Yes.
21           THE COURT:  If you plead guilty and if I accept your
22  guilty plea, you will give up your right to a trial and the
23  other rights that I've just discussed with you, other than your
24  right to an attorney, because you have that at all stages of
25  your prosecution, whether you plead guilty or go to trial.
```

F3DVHARP

1        If you do plead guilty, however, there will be no

2   trial, and I will sentence you based on the statements that you

3   make today and statements that I receive in the form of

4   sentencing submissions from your attorneys and from the

5   attorney for the government, and from a presentence

6   investigation report that I receive from the United States

7   Probation Office.

8        Also, sir, if you plead guilty, there will be no

9   appeal on the particular issue of whether or not the government

10  can use the evidence it has against you.  And there would also

11  be no appeal on the particular issue of whether you did or did

12  not commit the offenses to which you plead guilty.

13       Do you understand that, sir?

14       THE DEFENDANT:  Yes, I understand.

15       THE COURT:  And Mr. Hart, if you plead guilty, there

16  is a degree to which you will have to give up your right not to

17  incriminate yourself.  And that is because I need to ask you a

18  series of questions later on in this proceeding that confirms

19  for me that you're pleading guilty because you are, in fact,

20  guilty, and not for some other reason.  And in the course of

21  answering those questions, you will have to admit and

22  acknowledge your guilt.

23       Do you understand that, sir?

24       THE DEFENDANT:  Yes, I understand.

25       THE COURT:  Mr. Hart, do you understand each of the

F3DVHARP

1    rights we've been discussing?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Would you like me to provide any

4    additional information about any of them?

5              THE DEFENDANT:  No, thank you.

6              THE COURT:  And do you wish to continue at this time

7    to give up your right to trial and the other rights that I've

8    been discussing and enter a plea of guilty?

9              THE DEFENDANT:  Yes.

10             THE COURT:  I understand, sir, that you're charged in

11   the two counts of the information to which you're going to

12   plead guilty with obstruction of justice and perjury; is that

13   correct?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Mr. Cowley, could you please state the

16   elements of each of these offenses.

17             MR. COWLEY:  Yes, your Honor.

18             With regard to Count One, the obstruction of justice

19   count, which is charged in violation of 18 U.S.C., Section

20   1505, your Honor, that crime has three elements:

21             One, that on or about the dates set forth in the

22   information, a proceeding was pending before an agency of the

23   United States, in this case the United States Securities and

24   Exchange Commission.

25             Two, that the defendant was aware that a proceeding

F3DVHARP

1    was pending before that agency.

2             And, three, that the defendant corruptly endeavored to

3    influence, obstruct or impede the due and proper administration

4    of justice of the law under which the proceeding was being

5    conducted.

6             In regard to Count Two, your Honor, the perjury count,

7    which is charged in violation of 18 U.S.C., Section 1621, that

8    count has four elements, your Honor:

9             One, that the defendant took an oath to testify

10   truthfully before the SEC, a body authorized by law to

11   administer such oaths.

12            Two, the defendant made false statements as to matters

13   about which the defendant testified under oath as set forth in

14   the information.

15            Three, that the matters as to which it is charged that

16   the defendant made false statements were material to the issue

17   under inquiry by the SEC.

18            And, four, that such false statements were willingly

19   made.

20            THE COURT:  Thank you.

21            Mr. Hart, did you hear the prosecutor speak a moment

22   ago?

23            THE DEFENDANT:  Yes.

24            THE COURT:  And do you understand that these are the

25   elements that the government would have to prove at a trial

F3DVHARP

1    beyond a reasonable doubt?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Now, I believe, as well, although

4    Mr. Cowley will tell me if I'm mistaken, there is also perhaps

5    a venue requirement to each of these offenses, or is there

6    none?

7              MR. COWLEY:  There is a venue requirement, your Honor.

8              THE COURT:  Okay.  Let me just momentarily speak about

9    that, sir.

10             Mr. Hart, what that means is in addition to everything

11   that you've just heard Mr. Cowley say, the government would

12   also have to prove that some portion of these offenses took

13   place in the Southern District of New York, in this district,

14   including Manhattan, the Bronx, Westchester County.  That

15   element would have to be proven by a slightly lesser standard

16   of what's called preponderance of the evidence.  But those,

17   collectively speaking, are all of the things the government

18   would have to prove if this case were to go to trial.

19             All right, sir?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Let me then talk to you about the maximum

22   possible penalties that are associated with these offenses.

23   And I'm using the term "maximum" to refer to the most that

24   could possibly be imposed.  I'm not meaning to suggest in this

25   discussion that this is exactly what you're going to receive,

F3DVHARP

1  but I do want to make sure that you understand that by pleading

2  guilty, you're subjecting yourself to any combination of

3  punishments up to the statutory maximum.

4           So do you understand that, sir?

5           THE DEFENDANT:  Yes.

6           THE COURT:  Let me then talk first about the possible

7  restrictions on your liberty.

8           The maximum term of imprisonment for each of these

9  offenses is five years, and that could be followed by a term of

10  up to three years of supervised release.  And when I use the

11  term "supervised release," I'm sure you've discussed this with

12  your attorneys, but what I'm referring to is a period during

13  which you would be subject to supervision by the United States

14  Probation Office.  And during that period, there would be terms

15  and conditions of supervised release.

16           If you were to violate those terms and conditions of

17  supervised release, the possibility exists that your supervised

18  release term could be revoked, and that you could be sent to

19  jail to serve a period of time without a jury trial.  If that

20  were to happen, sir, you would get no credit for any time that

21  you might have spent on this offense, and you would get no

22  credit for any time that you spent on post-release supervision

23  without having any incident.

24           So have you had a chance to talk to your attorneys

25  about supervised release?

F3DVHARP

1          THE DEFENDANT:  Yes, I understand.

2          THE COURT:  I also want to make sure you understand,

3     sir, that there's no parole in the federal system.  So if you

4     were to be sentenced to a term of imprisonment, you would not

5     be released early on parole.  There is credit in the federal

6     system for good behavior, but even were you to receive that

7     credit, you would still have to serve approximately 85 percent

8     of the term of imprisonment.

9          Do you understand that, sir?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  In addition to these restrictions on your

12     liberty, the offenses to which you propose to plead guilty also

13     have certain financial penalties.  The maximum allowable fine

14     for each offense is $500,000 or twice the gross pecuniary gain

15     derived from the offense, or twice the gross pecuniary loss to

16     persons other than yourself, whichever of these three is the

17     greatest.  I can also order restitution to any person or entity

18     injured as a result of your criminal conduct.

19          Now, do the parties believe forfeiture is not

20     appropriate here on these offenses?

21          MR. COWLEY:  That's correct, your Honor, there is no

22     forfeiture for these offenses.

23          THE COURT:  Then I will not bother discussing

24     forfeiture with you, sir.  But I must order a mandatory special

25     assessment of $100 per count.  So in this case it would be

F3DVHARP

1   $200.  That's a mandatory special assessment, meaning I can't

2   not impose it.

3           Do you understand that these, sir, are the maximum

4   possible penalties to which you are exposed with a guilty plea?

5           THE DEFENDANT:  One second, please.

6           THE COURT:  Of course.

7           (Pause)

8           THE DEFENDANT:  I understand.

9           THE COURT:  I also want to make sure you understand,

10  sir, again, just because we are talking about maximum possible

11  terms, that the maximum total term of imprisonment, if you

12  stack those two counts together, is ten years imprisonment.

13          Do you understand that, sir?

14          THE DEFENDANT:  Yes, I do.

15          THE COURT:  Are you a United States citizen, Mr. Hart?

16          THE DEFENDANT:  Yes.

17          THE COURT:  I ask you that, sir, because some of the

18  folks who appear before me are not, and in those cases, a

19  guilty plea can have adverse immigration consequences.  It

20  doesn't apply to you.

21          This other question also may not apply to you, but I

22  am obligated to ask it:  Are you serving any other sentence,

23  state or federal, anywhere, for any offense?

24          THE DEFENDANT:  No, I'm not.

25          THE COURT:  And to the best of your knowledge, sir,

F3DVHARP

1   are you being prosecuted in any other jurisdiction?

2              THE DEFENDANT:  No, I'm not.

3              THE COURT:  Again, sir, I have defendants who appear

4   before me who are, and in that case I have to talk to them

5   about how the resolution of this case impacts that case.

6              I mentioned you are a citizen, sir, so you don't have

7   adverse immigration consequences, but there is this:  It is

8   possible that as a result of your guilty plea, you may lose

9   certain civil rights, to the extent you have them today, or to

10  the extent that you might otherwise obtain them in the future.

11  These would include the right to vote, the right to hold public

12  office, the right to serve on a jury, and the right to possess

13  a firearm.

14             Are you aware of that, sir?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Have you had a chance to talk to your

17  attorneys about the United States Sentencing Guidelines?

18             THE DEFENDANT:  Yes.

19             THE COURT:  And just briefly speaking, they are

20  something that I must consider in connection with any

21  sentencing that I do.  I mention them to you, sir, because I

22  want to make sure that you understand that to the extent that

23  your attorneys or the government or anyone has attempted to

24  predict the sentence that you will ultimately receive, their

25  predictions could be wrong.  I am the person who will be

F3DVHARP

1  sentencing you, and I will not be able to do that until I hear

2  from you today about your guilty plea, until I receive the

3  presentence investigation report that I've told you about that

4  the probation office will prepare, and until I receive the

5  sentencing submissions from the parties.  And after that, I

6  myself need to look at the guidelines, and I also need to look

7  at various sentencing factors that I know you've discussed with

8  your counsel that are set forth in Section 3553(a) of Title 18

9  of the United States Code.

10         So, sir, let me ask you this question first:

11         Have you had a chance to talk to your attorneys about

12 the process of sentencing?

13         THE DEFENDANT:  Yes, I have.

14         THE COURT:  And do you also understand the things that

15 happen that I have to do prior to sentence?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Even if the sentence that you ultimately

18 receive is different from what anyone might have told you it

19 is, and even if it's different from what you expect or hope

20 for, you will still be bound by your guilty plea; you will not

21 be able to withdraw your plea of guilty to these counts.

22         Do you understand that, sir?

23         THE DEFENDANT:  Yes.

24         THE COURT:  I've been told that there is a written

25 plea agreement between you and your attorneys and counsel for

F3DVHARP

1   the government.  I've been given a document.  The document I

2   have is dated March 6th of this year.

3           Now, do you have a copy of a similar document in front

4   of you?  If not, I will hand you my copy.

5           MR. COWLEY:  I can grab that, your Honor, with the

6   Court's permission.  That's the original, your Honor.  I have

7   another copy here for you if you'd like.

8           THE COURT:  Thank you very much.

9           MR. COWLEY:  The original has the defendant's

10   signature on it; that copy does not.

11           THE COURT:  That's okay.

12           THE DEPUTY CLERK:  He has a copy, your Honor.

13           THE COURT:  All right.  Then I now have two.  That is

14   fine.  Thank you, Mr. Cowley.

15           All right.  Mr. Hart, the copy that I have I have

16   marked as Court Exhibit 2, because I think the last time we

17   were together there was a waiver of indictment form that I had

18   marked as Court Exhibit 1.

19           So the document that I have, sir, is six pages long.

20   Is that the same length as the document before you?

21           THE DEFENDANT:  Yes, it is.

22           THE COURT:  Could you turn, please, to the sixth page.

23           All right.  You're there now, sir?

24           THE DEFENDANT:  Yes.

25           THE COURT:  On this page, at least on my version,

F3DVHARP

1    there are several signatures.  Are there signatures on the

2    version that you have, as well?

3              MR. PUVALOWSKI:  Your Honor, the version that's in

4    front of the defendant has the signatures from the government.

5    Ours are blank.  But I think if you ask the defendant, he will

6    confirm that he did, in fact, sign the version that's in your

7    hand.

8              THE COURT:  Okay.  Mr. Hart, are you able to see the

9    last page of this document, or would you like me to hand it

10   back to you?

11             THE DEFENDANT:  I can see it.

12             THE COURT:  There are two signatures.  Is one of them

13   yours?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Did you sign this today, sir?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Did you read this document before you

18   signed it?

19             THE DEFENDANT:  I did.

20             THE COURT:  Did you discuss it with your attorney

21   before you signed it?

22             THE DEFENDANT:  I did.

23             THE COURT:  Did you fully understand the document

24   before you signed it?

25             THE DEFENDANT:  Yes.

F3DVHARP

1          THE COURT:  One of the features of this document, and

2     it's on page 2, is that the parties have stipulated to the

3     application of the United States guidelines to your case.

4          I wanted to make sure you understand, sir, that that

5     stipulation is binding on you and your attorneys, it's binding

6     on the government, it is not binding on me, because I'm not a

7     signatory to the agreement.  This does not mean, sir, that when

8     I calculate my own guidelines calculation that I will come out

9     with something different, but I did want to make sure you

10    understand that I have an independent obligation to calculate

11    the guidelines.

12          So do you understand that, sir?

13          THE DEFENDANT:  Yes, I do.

14          THE COURT:  There are also a couple of provisions I

15    would like to go over with you.

16          Sticking with this page 2, if you look at the first

17    full paragraph, sir, I understand this to be an agreement by

18    you to make restitution in an amount ordered by the Court at

19    some later date.  Is that correct?

20          THE DEFENDANT:  Yes.

21          THE COURT:  And then also turning, please, to page 4

22    of the agreement, and I'm looking particularly at the third

23    full paragraph that begins "It is agreed."

24          Do you see that, sir?

25          THE DEFENDANT:  Yes, I do.

F3DVHARP

1              THE COURT:  What I understand this to be, sir, is a

2    series of waivers that you and the government have each entered

3    into, so you want to make sure I understand them.  What I

4    understand this to say is that you are waiving your right to

5    appeal or otherwise challenge any sentence that is 18 months of

6    imprisonment or below.  So if I were to sentence you to a term

7    of 18 months of imprisonment or anything less than that, that

8    you would be waiving your right to appeal or otherwise

9    challenge that component of your sentence.

10             Is that correct, sir?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Also in this paragraph, I understand that

13   you are agreeing not to appeal or challenge any term of

14   supervised release that is less than or equal to the statutory

15   maximum that I mentioned earlier.  So, again, if I were to

16   impose a term of supervised release at the statutory maximum or

17   anything less than that, you are waiving your right to appeal

18   that portion of your sentence.

19             Is that correct, sir?

20             THE DEFENDANT:  Yes.

21             THE COURT:  And then further on, I see that you are

22   agreeing not to appeal any fine that is less than or equal to

23   $30,000.  So were I to impose a fine of $30,000 or something

24   less than that, you are waiving your right to appeal that

25   component of your sentence.

F3DVHARP

1          Again, is that correct, sir?

2          THE DEFENDANT:  Yes, it is.

3          THE COURT:  Does this written plea agreement that

4     we've just been discussing constitute your complete and total

5     understanding of the entire agreement you have with the

6     government?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Has anything been left out, sir?

9          THE DEFENDANT:  No.

10          THE COURT:  Other than what is in this agreement, has

11     anyone made any promise to you or offered you any inducement

12     either to get you to sign this agreement or to get you to plead

13     guilty here today?

14          THE DEFENDANT:  No.

15          THE COURT:  Has anyone threatened you or forced you

16     either to sign this agreement or to plead guilty here today?

17          THE DEFENDANT:  No.

18          THE COURT:  Has anyone made any promise to you as to

19     what your ultimate sentence will be?

20          THE DEFENDANT:  No.

21          THE COURT:  Mr. Hart, please tell me in your own words

22     what you did that makes you believe that you are guilty of the

23     offenses charged in Count One and Count Two.

24          And I'll stop you for a moment, sir.  I believe you

25     have a written document in front of you.  Are these your words,

F3DVHARP

 1    sir?

 2            THE DEFENDANT:  Yes, they are.

 3            THE COURT:  All right.  And do you have this in front

 4    of you to sort of aid you in recalling what it is you wish to

 5    say?

 6            THE DEFENDANT:  Yes.

 7            THE COURT:  Please continue.

 8            THE DEFENDANT:  Your Honor, I did, in fact, engage in

 9    acts to obstruct a pending SEC investigation during the time

10    period alleged in the information.  And I did offer sworn

11    testimony to the SEC on August 19th, 2009 that was not

12    truthful.

13            From 2006 to 2011, I worked for a small investment

14    firm in Englewood Cliffs, New Jersey.  In July of 2009, I

15    learned that the SEC was investigating my securities trading

16    activity, including whether I was conducting improper match

17    trades between a fund managed by my employer and a fund I

18    beneficially owned called Octagon Capital Partners, whether I

19    was trading on material nonpublic information in connection

20    with several pikes offerings.

21            As part of its investigation, the SEC in Manhattan,

22    New York sent subpoenas to me personally and also to the firm

23    where I worked.  The owner was away when the SEC subpoena

24    reached the firm.  I opened it and decided to respond to it

25    myself without telling the owner or any coworkers about it.  I

F3DVHARP

did not want the owner to know about my trading or that I was under investigation by the SEC, because I was fearful that I would lose my job.

In sending documents to the SEC in response to the subpoena sent to my employer, I did not disclose to the SEC that I was the only one at the company that was aware of the subpoena. This was a poor decision. I took a bad situation and made it worse.

Later, on August 19th, 2009, I sat for sworn testimony before the SEC, in the SEC's office here in Manhattan. During that sworn testimony, I also told several lies. Specifically, I was asked about match trading conduct, that is, whether I caused a fund managed by my employer to purchase securities from Octagon Capital Partners at employee prices.

While I testified accurately that I caused trades to take place between the firm that employed me and Octagon in responding to questions from SEC's attorneys, I falsely stated that the owner of the firm I worked for and I discussed and agreed to carry out these trades as deliberate strategy for the fund managed by my employer, and that we did not believe there was any problem with the trading. In fact, I never disclosed or discussed any of this trading with the owner of the firm.

I also falsely stated during my sworn testimony that I spoke with the owner of the firm I worked for about the SEC's investigation into my trading activity, when, in reality, I

F3DVHARP

never discussed the SEC's investigation with my employer.  As I
said earlier, I did not want the owner to find out about the
SEC investigation or my improper trading out of fear that I
would lose my job.

     I know that the things I lied about were important to
the SEC's investigation and into my trading.  Prior to
testifying, I had taken an oath to tell the truth and
understood I was under an obligation to provide accurate
testimony.  When I did not do so, I knew it was wrong and I
knew it was unlawful.

     Later, on or about December 8, 2009, one of the SEC
attorneys assigned to the investigation called our office, and
I answered the phone.  The attorney requested a call from the
firm owner, but I did not relay this message.  The next day,
the same SEC attorney called back, and again asked for the
owner.  This time I pretended to be the owner, my employer, and
in summary said that I was aware of Steven Hart's improper
trading, but still wanted to retain him as an employee.  I also
falsely stated that I was aware of the match trades and
approved of it as a means of disposing of restricted stock.

     Two days later, during another call with SEC
attorneys, I again impersonated the owner and made several more
false statements along the same lines as the previous call in
which I impersonated my employer.

     Your Honor, in pretending to be the firm's owner, I

F3DVHARP

```
 1    obviously did not stop to think how ill-advised this decision

 2    was.  Again, I took a bad decision and made it worse.

 3              In conclusion, my conduct that I described to you

 4    today was wrong, unlawful, and intentional.  I acknowledge that

 5    the conduct impeded the SEC's investigation.

 6              Please note that I am sorry for what I did, and I am

 7    prepared to accept responsibility for my actions.  Thank you.

 8              THE COURT:  Thank you, sir.

 9              Mr. Puvalowski, do you know of any valid defense that

10    would prevail at trial or any other reason why your client

11    should not be permitted to plead guilty?

12              MR. PUVALOWSKI:  I do not.

13              THE COURT:  Thank you.

14              Mr. Cowley, are there any additional questions that

15    you would like me to ask?

16              MR. COWLEY:  No additional questions, your Honor, but

17    there are a few additional facts that I would like to put on

18    the record.

19              One is that, in fact, an official proceeding, that is,

20    an investigation, was opened by the SEC and was taking place

21    between July and December of 2009; that the SEC is, in fact,

22    authorized by law to administer oaths when doing things like

23    taking testimony of witnesses like Mr. Hart.  And then one

24    other fact to add is that the SEC attorneys that were making

25    the calls referenced by Mr. Hart in December of 2009 were
```

F3DVHARP

1    located in the SEC's offices in Manhattan, New York.

2            Additionally, your Honor, one other thing I'd like to

3    put on the record is that in May of 2014, a tolling agreement

4    was entered into between the parties; and that pursuant to that

5    agreement, the period beginning on May 23rd, 2014 and running

6    through and including May 22nd, 2015, was tolled and excluded

7    from any calculation of time for purposes of adjudicating any

8    claim based on either the statute of limitations under the laws

9    of the United States or any constitutional statutory or other

10   doctrine concerning pre-indictment delay.

11           So I just wanted to put that on the record.

12           THE COURT:  Before you sit down, Mr. Puvalowski, you

13   don't dispute or challenge anything that Mr. Cowley has said;

14   is that correct?

15           MR. PUVALOWSKI:  I do not.  That's correct.

16           THE COURT:  Thank you.

17           Mr. Cowley, could you please summarize what the

18   government's evidence would be if this case were to proceed to

19   trial.

20           MR. COWLEY:  Yes, your Honor.

21           The government's evidence would consist of the

22   deposition testimony of Mr. Hart from the original deposition

23   that took place in August of 2009.  It would also consist of

24   the contents of an additional deposition that Mr. Hart sat for

25   later, I believe a few years later, where he acknowledged under

F3DVHARP

1    oath that he was, in fact, the person impersonating his

2    employer, and that he testified falsely in his previous

3    depositions.  The evidence would also consist of testimony from

4    SEC staff attorneys that were present at the original

5    deposition and participated in phone calls with Mr. Hart in

6    December of 2009, thinking at the time that they were

7    interacting with others.

8              THE COURT:  Thank you.

9              Mr. Hart, were you able to hear Mr. Cowley?

10             THE DEFENDANT:  Yes.

11             THE COURT:  And do you understand, sir, that if this

12   case were to go to trial, that is the evidence the government

13   would present?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Mr. Puvalowski, do you agree that there's

16   a sufficient factual predicate for a guilty plea?

17             MR. PUVALOWSKI:  I do, your Honor.

18             THE COURT:  Is there any reason why I should not

19   accept this guilty plea?

20             MR. PUVALOWSKI:  No, your Honor.

21             THE COURT:  Mr. Cowley, do you agree there's a

22   sufficient factual predicate for the guilty plea?

23             MR. COWLEY:  I do, your Honor.

24             THE COURT:  Is there any reason why I shouldn't accept

25   it?

F3DVHARP

1          MR. COWLEY:  No, your Honor.

2          THE COURT:  Mr. Hart, I will ask this question just

3    because it is appropriate:  Do you wish to continue, sir, to

4    enter a plea of guilty to Counts One and Two of the

5    information?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Because you've acknowledged that you are,

8    in fact, guilty of these two offenses, because I'm satisfied

9    that you know of your rights, including your right to enter a

10   plea of not guilty and go to trial, because I'm satisfied that

11   you're aware of the consequences of your guilty plea, including

12   the range of sentences that may be imposed, and because I find

13   that you are knowingly and voluntarily pleading guilty, I will

14   accept your guilty plea to Counts One and Two of the

15   information.

16          Now, the next stage, sir, is sentencing.  And I talked

17   about it a little bit earlier, because I mentioned that the

18   probation office will want to speak to you in connection with

19   sentencing in order to prepare a presentence investigation

20   report.

21          Mr. Puvalowski, do you wish to be present for any

22   interview?

23          MR. PUVALOWSKI:  We do, your Honor.

24          THE COURT:  Then I will order that there be no

25   interview, unless you or your colleague, Mr. Kern, is present.

F3DVHARP

1      Mr. Hart, let me offer you the following thought and

2  you can do with it what you will:

3      If and to the extent that you speak with the probation

4  office, I would ask you to be sure that everything you say to

5  them is as truthful and as accurate as you can make it.  I say

6  this, sir, because in trying to figure out how to sentence

7  someone and to what to sentence someone, the presentence

8  investigation report is very, very important to me.  I read it

9  very carefully, and I tend to ask a fair number of questions

10  about it.  So it helps me the most if the document is as

11  accurate as it can be.

12      I will let you know and your attorneys will let you

13  know that you have an opportunity to see the report before I

14  do.  And you have the opportunity to make corrections and offer

15  corrections to the probation office if there are errors in the

16  report.  You also have the opportunity to object if there's

17  something in the report that you think is objectionable.  So,

18  again, I invite you -- I don't tell you you have to, but I

19  invite you to make use of those opportunities, because the most

20  complete presentence report is the most helpful thing for me.

21      Do you understand, sir?

22      THE DEFENDANT:  Yes.

23      THE COURT:  Thank you.

24      Mr. Lopez, may we have a sentencing date.

25      THE DEPUTY CLERK:  Yes, your Honor.

F3DVHARP

1          Tuesday, June 23rd at 3 p.m.

2          THE COURT:  Does that work for the parties?

3          MR. COWLEY:  It does for the government, your Honor.

4          (Pause)

5          MR. PUVALOWSKI:  Your Honor, I apologize for the

6  delay.

7          THE COURT:  No, no.  Whatever time you need.

8          (Pause)

9          MR. PUVALOWSKI:  Would it be possible -- we're trying

10  to deal with a school schedule issue.  Would it be possible

11  perhaps one week later?  That's the final week of school, and

12  one week later would be appreciated.

13          THE COURT:  Okay.  I'm sure we can find time.

14          So the week of the 30th of June.

15          MR. PUVALOWSKI:  Yes.

16          THE COURT:  School will be over by then?

17          MR. PUVALOWSKI:  School will be over by then.

18          THE COURT:  Mr. Lopez, something that week.

19          THE DEPUTY CLERK:  Yes, your Honor.

20          Thursday, July 2nd at 3 p.m.

21          MR. PUVALOWSKI:  Thank you very much, your Honor.

22          THE COURT:  Sure.

23          Mr. Cowley, does that work for you, sir?

24          MR. COWLEY:  It does, your Honor.

25          THE COURT:  Okay.

F3DVHARP

1          Let me just remind counsel or let counsel know in the

2    first instance that I have individual rules of practice for

3    criminal cases.  The important thing to know is simply that I'd

4    like the defense sentencing submission two weeks in advance of

5    sentencing, and the government's sentencing submission one week

6    in advance of sentencing so I can have a chance to look at it.

7          Mr. Cowley, any objection to continuing Mr. Hart on

8    the current bail conditions?

9          MR. COWLEY:  No objection, your Honor.

10         THE COURT:  Okay.  Mr. Hart, then let me just advise

11   you, sir, you need to be here for the sentencing.  I know you

12   know that, sir, but I need to tell you that nonetheless.  Only

13   bad things can happen for you if you fail to appear for

14   sentencing.  There is a separate offense of bail jumping, and

15   I'm sure that's not something you're interested in pursuing.

16   So we will leave you out on bail on the conditions we set at

17   our last proceeding.  And it is my every expectation you will

18   be here on the 2nd; is that correct, sir?

19         THE DEFENDANT:  Yes.

20         THE COURT:  All right.

21         Mr. Cowley, is there anything else that we should be

22   talking about in this proceeding?

23         MR. COWLEY:  Not from the government, your Honor.

24         Thank you.

25         THE COURT:  Thank you.

F3DVHARP

1              Mr. Puvalowski, anything else?

2              MR. PUVALOWSKI:  Nothing else, your Honor.  Thank you.

3              THE COURT:  Mr. Hart, I should have asked earlier, is

4     there a member of your family who's here to support you today,

5     sir?

6              THE DEFENDANT:  Yes.  It is my wife, Betsy Hart.

7              THE COURT:  All right.

8              Ms. Hart, I do want to welcome you.  I know these are

9     never fun proceedings; no one has fun at a criminal conference.

10    But it is critically important to the defendants that I see

11    that their family members are there to support them.  So I'm

12    sure Mr. Hart is incredibly appreciative of the fact that you

13    are supporting him through this.  And I am thankful to you for

14    coming today.  So thank you very much.  And I would have noted

15    you earlier, I just wasn't sure whether you were here with him.

16             So thank you for coming today.

17             MS. HART:  My pleasure.

18             THE COURT:  Okay.  Thank you.  We're done.

19                            *    *    *

20

21

22

23

24

25